Thank you and good morning everybody. It is wonderful to see faces, albeit with masks on. So welcome, welcome to the court. Our first and only case this morning is County of Butler v. Governor of Pennsylvania, number 20-2936. And do the appellants wish to reserve any time for a rebuttal? All right, that'll be granted. You may proceed. I should probably start off, the clock isn't running yet, but we are very interested in mootness and we'd like both parties to address that. So, thank you. You can proceed. Just give me a second, Your Honor. You take your time. May it please the court, my name is Bart DeLone. I'm with the Pennsylvania Attorney General's Office and I'm here on behalf of the Governor and Secretary of Health of Pennsylvania. As Your Honor has asked, I'll start with mootness as jurisdictional. There's no active case or controversy left in this case. What appellees are now seeking is an advisory opinion. What changed between the time you sent us your letter in March 8th and then the letter in July? Yes, a couple of that altered the way that emergency declarations are implemented and the governor's office came out, publicly said, in effect, so what? The Secretary of Health here in the Commonwealth still has the power to impose these kinds of restrictions. That's true, Your Honor, but the Secretary's orders have also been eliminated pursuant to March 31st order. Well, but does the Secretary have the authority to reimpose these kinds of orders? She has the general authority to do that, yes, but I don't think that would get you into an exception for mootness because, as we pointed out in our correspondence, this court said in the United Steel paper that what you need is a reasonable expectation that you're going to have the same kind of actions occur again, and in that particular case, they talked about some sort of reenactment of the same statute, and, Your Honor, I don't know what's going to happen, but that's exactly the point. No, that is exactly the point. Isn't the burden on you at this point to show mootness? Well, Your Honor, I think we have met that burden because all the orders at issue in this case no longer are applicable. She could reimpose them tomorrow. Cases are going up. Delta variant is in the news all over the place. L.A. has got restrictions back in place. Three million dead in India. People traveling all over the world. Who's to say that in one month or one week, Secretary Bean isn't going to say, you know what, this is Well, Your Honor, when I say that's exactly the point, how do we know that's what she's going to say? And if she's what she does say, how are we going to know what kind of challenges available? And this this overarching orders that were implemented commonwealth wide, as everybody said, including the district court below, were unprecedented. And I think it's it's not reasonable speculation to suggest that those same kinds of orders are going to be orders. Correct. That right issue. The determination is whether there's a reasonable likelihood those exact orders were being reimposed. As I said in the United Steel paper, this court said is whether the challenge law will be reenacted. That's the exact orders. So do you what rules, if any, should the existence of a vaccine, the availability of personal protective equipment, um, therapeutics? Well, I would play in all of them. I would suggest, Your Honor, that the fact that in Pennsylvania, 61% of the adult population has been fully vaccinated, and another 80% have been partially vaccinated, fundamentally changes the public health landscape and makes whatever, um, uh, actions might be taken in the future that much more removed from what was happening when we had no vaccine and when we were dealing with a novel virus that we knew nothing about. You had the vaccine in place in March. The vaccine was out and had been out for months when you wrote us a letter and said, This case is not moved. No pandemic. And we were still under active orders at that time. Right. And it was the expiration of the orders that among the changes. Absolutely. And if an order is expired, does that mean the voluntary cessation doctrine doesn't apply? Well, like, frankly, Your Honor, I don't see how you can suggest that we're voluntarily succeeding as a judge. Excuse me. I'm not talking about leaving the cop. The maybe if you were gone, but but as Judge Jordan pointed out when we were first asked, we specifically said, um, no, it wasn't moved. So I don't think you could suggest that the Commonwealth is is reacting to the fact that this litigation has been initiated. We're reacting to changes on the ground as well as the fact that I understand those orders expired by their own terms, right? Correct. That's correct. So so this wasn't something that we did to sort of get out of this litigation. Well, respond if you would to, uh, the hard net case hard versus Pennsylvania State Education Association. We said in that case, the burden the Commonwealth has to me, uh, is will let's see. Voluntary cessation will move the case only if it is, quote, absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. Well, I think we meet that standard, Your Honor. I don't absolutely clear. You're Are you prepared to stand at the podium today and say the secretary will not reimpose any kind of stay at home order will not impose any kind of business cessation order will not propose any public gathering restrictions. Can you make us that statement? I think I can safely say that there will be nothing like that. That would be commonwealth wide. Can you say that with respect to Allegheny County or Bucks County, Your Honor? You know, in all fairness to the court, obviously, as I said, since we don't know what we might be facing, I can't make that kind of a blanket statement. No, sir. Okay. And I wouldn't. In fact, if you had, I'd be worried about about you. So since that's the case and the standard we've said is absolute, it must be absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur and the burdens on you. Uh, aren't we in a posture where we'd have to say, Well, no, it's not absolutely clear with the delta variant kind of raging through the United States right now, or at least by some reports. If you read media reports, uh, it's out there in some significant force. How would we be able to say? Well, that's absolutely clear. There's no reasonable prospect. Well, as again, Your Honor, when in the correspondence we said, we said it to United Steel with this court said that the reasonable expectation that you would be subject to the same action is your answer to Judge Jordan. The fact that it's the identical order the same order as opposed to an order, right? I mean, measles happens, mumps happens. There's all sorts of things the secretary might deal with. But I would respectfully suggest that whatever she deals with with respect to Kobe is going to be fundamentally different because of the vaccination rates and because of where we are now versus where we were a year ago. So we should we should not be looking in the abstract that public health restrictions. We should be looking more specifically. That is, are these exact regulations likely to be reimposed as opposed to reaction to future conditions? Correct. And not only that, Your Honor, but it has to be addressed specifically at the appellees. It has to be at the parties in interest. Otherwise you're writing what I would respectfully suggest is a classic advisory opinion. So it's not an on off switch. You don't go back in. I like that, Your Honor. It's definitely a dimmer switch. But I think given where we are versus where we were, given the parties involved and given the absolute unknowns about what we're facing or what kind of our orders would be entered and what kind of challenges would be made, I think you're doing exactly if you if you do not consider this case moot, you're doing exactly why cases and an advisory opinion because you don't know the parameters of what you're dealing with and you don't have parties in interest that are relating to something specific. That used to be true. That's why we we initially answered the way we did. It's no longer true. This case is no. So how did Bailey's campground get it wrong? First Circuit says the governor is not denied that a spike in the spread of the virus in Maine could lead her to reimpose the self quarantine requirement just as strict as the O-34s. So there you go. There's the First Circuit says they can't say they're not so it's not moot. You're standing there saying I can't say I can't say it won't happen. I can't say something won't happen. What I can say I think with some confidence is that what has happened and what we were facing in this case is not what you would be facing going forward. And in your view if it's the exact same order but it's limited to say Allegheny County and not all counties that that's that means you don't have to worry about a court. Again the challenge law being reenacted that is from United Steel. I understand your position on United Steel. I'm trying to understand you've agreed that it's a dimmer switch. You know we're talking about a re-estat not an on off here. So at what point would we say well you know the the brightness of the the order here the switch is turned up enough that there's a problem here. It's a recurrence. It's in it's close enough that this voluntary cessation doctrine has kicked in and we should keep well keep hold of this case. When is one county enough? I don't know your honor because it would depend on the county and would depend on whether or not it affects the appellate because that's another part of the equation. If it doesn't affect the appellees and you don't have a party in interest on the other side. And and and your position is since you can't say it would affect them that they're out of luck. If the way if the burden is on you isn't it the burden on you to say I can say with quote it's absolutely clear unquote that it won't affect them. Your honor you asked me that before and I can't stand here and tell you that that is the case. But I think you're running a terrible risk that you're going to end up with an advisory opinion. Well isn't there a terrible risk that if we say this case is back here in a month that then these folks have to go through another year and a half to get to this point? Isn't that deprivation of judicial review kind of a risk too? I would be I would not be fair if I didn't suggest that there's something else in the balance. But I think I just stand here and say that I I think the landscape is so fundamentally altered that again can I give an assurance that nothing along these lines could happen? Absolutely not. Do I think it's anywhere near likely as opposed to reasonably expected? No way. What's your best factors to give the assurances that it is as close to absolutely clear that the same orders challenged here would not be reasonably expected to be reinstated? Because I think anything that would come up would be would be dealing with a population that is a large chunk of it has been vaccinated. There's been a lot more as we say throughout our brief there's this is a moving target it continues to be a moving target. We've learned a lot and I think the the chances of a like type of order being entered. We have to focus on the fact it's going to be the same order not a like type, same order. Same order. I I want to be careful because of what Judge Jordan rightly reminded me of. I do not want to misstate this. Of course. I think the the case law says a reasonable expectation. I think an expectation of that happening is profoundly unreasonable. Why? For the reasons we've just discussed. For the vaccines, what we know about the transmission of the disease, efficacy of masks. Correct. The fact that we can function without those restrictions. Right. We've learned a lot in the last year. A lot has changed in the last year. A lot of the population is is um vaccinated for the delta variant. Um it's just not the same circumstance. And what I can't do is say that the Department of Health or the secretary it won't take some sort of I think it's incredibly unlikely and unreasonable to expect that with the actions that they did take and that no no longer our extent would be taken again or anything remotely like. So when we judge movements you're asking us to look at the state of affairs as they exist now. Sure. When we if we were to find the case not move and move to the substantive analysis of the claims we would be looking at the state of affairs as they existed at the time the orders were entered. Oh absolutely are. And as we cite in our brief when we talk about rational basis, we say it's a hope case and and what kind of judgment you need to make with respect to how these public people interacted during this incredibly exigent circumstances when we didn't know everything we know now. Um so yes, you judge mootness from where we are and you judge the way you have to I think you have to go back into a time machine frankly a little bit because the the whole reason for the kind of deference that the Supreme Court has allowed in these circumstances is that you are in an emergency situation. You are on a learning curve and with all due respect I think the district court here obviously disagreed with the public policy determinations that were made suggested in a number of points in his opinion that he thought the line should have been drawn differently said at one point that the tools that could be used should use different tools and you know what he might be right and we don't dispute his capability to question public policy determinations but we don't think and I would say this respectfully we don't think that's a rational basis review in whatever context. But we want to we've asked you a lot about mootness during your time we'll give you some extra time. Thank you. Maybe you could maybe you could move on to the merits. Yes. I think we all agree that you know that the government attempting to protect the public's health and welfare is an important governmental interest. The district court here though had a problem with sort of the fit you know the tailoring and and perhaps you could deal with that with respect to the various issues. Right. Sure you are. With respect to. Obviously you know that sort of the overlay here is you know the government we have a constitution and the government is not is not able to act at its caprice or will. There are limits I assume. Absolutely. Maybe we could explore those limits a little bit. Okay and I think that that one of the things that we're again with respect the district court may have taken a wrong turn as they see he seemed to suggest that our position. He's the district judge? The district judge. Excuse me. Judge Stickman. Judge Stickman seemed to suggest that we were somehow arguing for a suspension of regular constitutional analysis. We never did that. Okay well if that's the case why why did you spend a good deal of your time in the briefing pounding him for his comments about Jacobson? You say that the Jacobson framework for evaluating public health has been reiterated through the decades. He applied rational basis review. You think Two points there your honor. I don't I think there's there's an added level of deference. It's still rational basis review. You don't. What is it? What it's still it's still rational basis but it's not rational basis. I mean what is what is the Jacobson framework you refer to. Your honor hold on a second. I'm quoting from page 21 of your opening brief. Thank you your honor. Your honor one of the things that Jacobson talks about is the the reasonable actions that that that governor government policymakers make. Not like rational basis review right? At least that's how Justice Gorsuch characterized it in his concurrence in the Roman Catholic diocese of Brooklyn and none of the other members of the court took issue with that. Well but we we don't either your honor. We we we suggest that it is rational basis but I do think that I think if you look at at perhaps an answer I can give you is if you look at the Chief Justice concurrence in South Bay it isn't he doesn't say stray away from rational basis but he says this is a this is an area where it should be left where it can be to the public policymakers in the political branches of government. I'm struggling here because it sounds like you're saying it's rational basis but it's really rational basis plus and it's either rational basis or it is a rational basis. If it's rational basis then people can disagree about fit as standard we're applying is the same. Jacobson looks like he applied rational basis test. Now maybe the Chief Justice thinks rational basis comes out differently than Justice Kavanaugh does or than Justice Gorsuch does you know but they're they're applying the same standard aren't they? Yes but again with all due respect I don't think that's what Judge Stickman did here. Okay now you can you can say he he mouthed the right words but he didn't actually apply the test that I understand but the standard he at least invoked the correct standard right? Rational basis is the standard. Yes. Okay then tell us how he got it wrong. Well he kept he kept talking in various places about how the tools were wrong or how the line drawing was done incorrectly or how it was arbitrary ad hoc and how businesses were determined to be life-sustaining versus like not life-sustaining and your honor that's not a rational basis analysis that's a I would be a better public policymaker than they were. And and when we when we're applying rational basis we're applying that to which of the orders? Is it your position that rational basis is to be applied to all I mean he divided it into two but in my mind and I think in the briefing it's there's business closure, there's public gathering restrictions, there's stay at home. I've just for my benefit thought of those as three buckets three different things. Is the same rational basis for you to be applied? I think it should be the same rational basis I think with respect to I think the stay at home orders he sort of wandered off into First Amendment jurisprudence in a way in talked about not just First Amendment he talked about substitute process and LUTS right? Right. In your briefing you say there that LUTS purportedly adopted a higher a fundamental right. Yeah your honor and if I did your honor and it's my brief then I misstated. I don't know that we said purportedly but I would I think with the point I was trying to make is that if you read LUTS and I know you have I the court seemed incredibly reluctant to reach the conclusion that it did. But that's the point right? Yeah. It said quote we conclude that such a right exists that is an unenumerated constitutional right of interstate travel and it grows out of substantive due process. Yeah. So whether they like doing it or not they did it and it's still precedent. No absolutely it is still precedent and binding on us. Binding on you except that as we cite in our brief if you look to the Tenth Circuit and I'm not suggesting you pick between your binding precedent and the Tenth Circuit. We can't. We can't yeah but but if you look at McCool they they do an analysis and refer to some subsequent Supreme Court case law. But isn't our current precedent that there is a recognized right in this circuit to intrastate travel which is subject to intermediate scrutiny. Is that what I'm asking? Is that your understanding of our case law? May not be the position you'd like to take. No I think what I would say is that obviously LUTS as it stands if you if you if you don't if the court chooses not to reevaluate based on subsequent Supreme Court case law then LUTS obviously it's it's a fundamental right but I still think it should be a How could we do that in the face of LUTS? If you if your premise is accurate and I think it is that LUTS is still binding law and LUTS applies an intermediate test, intermediate scrutiny, then how could we apply rational basis? We're bound by our precedent. I think I think I think the point of of Jacobson and the context of an emergency pandemic the court should look to a rational basis even in the even in the context of the kind of intrastate interstate determination that was made in LUTS that didn't didn't deal with an emergency pandemic. You're saying that Jacobson ought to apply verbatim in these types of circumstances? Well not yes I mean I think Jacobson is an overarching case that that that gives guidance across the board. Do you lose if intermediate scrutiny applies? No no we still win anyway because this is clearly narrowly tailored to to a particular substantial government interest that everybody recognizes as such and if you if you're trying to figure out in a deadly pandemic and a virus that can infect people without making them sick symptomatic initially if you're trying to figure out a way to encourage social distancing there's there's nothing less than narrow tailoring with respect to these orders. Is it partly narrowed as a result there are exceptions in the state home order? Absolutely and from the very beginning your honor and those exceptions became broader as we learn more. What were those what are those exceptions that you're relying on and while you're doing that could you answer the other side's assertion that that this was just a lockdown healthy never before happened healthy Pennsylvanians told stay in your house or you're subject to penalties and they point out in their briefs that people were arrested and charged. Your honor the I can't remember the specifics of the orders but they talked about you know going to get food taking care of other people exercising those are all things within the church church anything like that of course of course and with respect to the to the arresting that just is not what was happening and as we point out in our brief well it did happen didn't it there were a few my a few instances where that happened at the very beginning and as we point out in our brief the chief deputy chief of a 29 45 46 29 51 and 30 31 but that was not the policy that it was very quickly corrected and that it was never the intent that anybody would be subject to any sort of enforcement actions relating to the state home order. So that just wasn't what happened was there some confusion at the beginning yes these are people and this is a Commonwealth order dealing in exigent circumstances but that's just a mischaracterization of what was happening. I'd like to ask you a question on returning to equal protection and the challenge on the business closure orders. Yes ma'am. One of your adversaries arguments is that there is no definition of life-sustaining versus non life-sustaining and the testimony as I understand it in front of the district court was the folks who were responsible for making those decisions and allocations or relying on some federal categorizations that were done including by FISA on critical infrastructure. So one of my questions is can you explain why there was no definition ever articulated? Yes first one of the the criteria you're talking about is the North American industry classification system which is very all sorts of different ways of doing businesses and that was a way of making sure that the same types of businesses were treated the same way and that goes back to my other point. That doesn't define life-sustaining and non life-sustaining. No your honor it doesn't but that's what the public policymakers were doing and as they went along and did it they it got broader and broader and it changed ten times and that's why your honor there is no fixed definition and I think. You were also relying on FISA which is the critical infrastructure. Correct. And was that informing the categorization? It subsequently did but again that's if we I think they go back to Judge Stickman for a second that's he suggested that that that if you didn't have a written definition you know that would it was it was arbitrary or something it's it's not I mean that's the whole point of policy making and that's the reason why the the line drawing is not part of the rational basis review. Is there some obligation to just to be transparent and have a standard though I mean you said that it changed ten times that's that's their point their point is it got broadened just was all over it was like whatever they had for breakfast that morning that's what you were getting that's kind of the tone that I'm being semi flip here but that's a bit of a tone that we're coming from. I know what you're saying but if I could your honor let's go back to Judge Schwartz's time machine for a second. We didn't know what we didn't know and they were they were trying to do this as quickly and as efficiently as they could and to suggest looking back that someone else could have done it differently and maybe better it's not something I'm gonna dispute here but it's also not a rational basis for review and if you really irrelevant is what you're saying. Correct yeah and that practice what Hefner says it's it's the the line drawing is completely irrelevant from a legal standpoint and I think that's one of the fundamental or excuse me the errors that Judge Stickman made because he was acting like a super legislature and again I get it we talked about in Judge Conner we say to Judge Conner doing a rational basis review where he talked about the Hobson's choice that my clients were facing and if you look at the record in a variety of places they're constantly saying we have to balance making sure the economy stays viable versus how many people are going to be dead and you know the fact that Judge Stickman thought we should have done it differently or frankly that police thought we should have done it differently I completely understand and as you said and as Hefner says that's totally irrelevant. Can I ask a few questions? I want to move to the First Amendment here for a minute if that's all right. You assert that rational basis review should apply here. Yes. Now aren't both expressive association and the right to assembly intertwined in this case there's there's the right to assembly which is right in the Constitution and therefore obviously fundamental right? Right. Yeah so but how do you disentangle expressive association from the right to assembly when what they're saying is your public gathering restrictions prevented us from associating with each other and prevented us from doing it in the political context the place where assembly is to be one of those places where it's to be most respected. Well your honor I don't I I don't think you can disassociate them and I don't think that we're suggesting that you have to I think what we are saying is first there was no the First Amendment was not even implicated because these there was effects to the First Amendment but if you look at the O'Brien test the the way that you do O'Brien is if a neutral regulation promotes substantial government interest that would be achieved less effectively without it that then you've met the test. Well then you've just left rational basis so aren't you agreeing that it's not rational basis as soon as you invoke O'Brien aren't you acknowledging you're out of rational basis land. Well I. O'Brien is not rational basis. No I I guess that's right. Rather interchangeable with intermediate scrutiny. Can you ask that question again your honor? Well it was really Judge Jordan's question but aren't O'Brien and intermediate scrutiny essentially the same? No your honor because I think if you look at O'Brien and O'Cara and those cases it's kind of a threshold thing do we need to get to the First Amendment at all if we do need to get to the First Amendment then clearly this is this is narrowly tailored. Well O'Brien is completely different from O'Cara. The Supreme Court has set up these three tiers right strict scrutiny when you're in the First Amendment strict scrutiny is applying to expressive conduct that's directly affected by government action and then which says rational basis because it's not either directly or indirectly affected. That's am I am I wrong about that tiering? I'm not I'm not going to second guess you on that your honor but I guess the way the way I would say it is that O'Cara is a threshold which is which is if the expressive conduct is sort of incidental it's not what you're aiming at then you're done but if it's not then you can go to whatever level you want and whatever level it is we certainly meet. All right well let's assume that we thought hmm you know this isn't directly aimed at expressive conduct but it's it's clearly having an incidental it's clearly having some effect and we're so we're dealing with O'Brien. Okay. Isn't O'Brien perfectly consistent with time place and or tests of the sort described in Ward versus Rock against racism which is an intermediate scrutiny test? Yeah but if you if you look to Rock or O'Brien the test is still whether or not the the regulation promotes the substantial government interest. Okay and so you're saying you can win under intermediate scrutiny? Yes absolutely we can we we win whatever scrutiny you want to present we win. One of the criticisms of the first amendment subject one of the criticisms of the district the district court made was this capacity limits based upon percentages of occupancy under the fire code versus numeric limits that's on the number of people that were in a place. Right. And the way I read the opinion he suggested that that wasn't tethered to anything. My words not his but that's how I read it that he checked that he criticized it because he didn't think it was arbitrary I suppose. Explain to us why it is those are mechanisms to narrowly or that are narrowly tailored to achieve the goal of public health. Okay because we don't we're not sure what the compelling interest is at any one time. We are trying to figure that out we are titrating it and like everything else we've been discussing it changes over time. But my question maybe I'm this unclear it's not I'm not questioning on the fact that there would be limitations in places. Right. The question as I understood the opinion one of his challenges his criticisms was sometimes he did it by the number of people in the place sometimes he did it by the number percentage the place could house. Right. And that was a criticism and I was wondering what what's the basis to make that distinction. Is it because some places have occupancy limits based on the fire code and others don't and we need to figure out with some some method to keep limited numbers of persons in one in places so there'd be social distancing like what's the basis. Well my my recollection your honor is that that was based on CDC guidelines and what what was the threat with respect to social distancing and as these orders changed and they did the thresholds got higher and higher but I guess I would make a more fundamental point too which is if you look at a greater Philadelphia Chamber of Commerce which we cite it doesn't talk about in empirical proof being necessary to to defend these these line drawings and I think this goes back to my fundamental point which is I totally understand that Judge Stickman thought that our line drawing could have been better but whatever whatever standard you want to use that is not a with all due respect that is not an analysis on whether or not there's a constitutional violation that is a question of whether or not Judge Stickman could have been a better policymaker and I'm not going to suggest that he wouldn't have been I'm just suggesting that with all due respect that wasn't what he should have been doing in this instance and that was one of the sort of the fundamental errors that he was making throughout. All right thank you counsel we'll hear you on the phone. Take your time. Thank you, your honor. I guess I get to take this off now. Go ahead. Thank you. Good morning, your honor. Good morning. May it please the court, my name is Thomas W. King III and I appear this morning on behalf of the FLEs. I'll be joined by counsel one of the amici the New Jersey Business and my esteemed colleague from New Jersey will do so. I also want to note to the court my colleagues who were involved in this case are with me in the courtroom Mr. Brett, Mr. Elliott, and Mr. Schubert who were co-counsel with me in the lower court case in the western districts of Pennsylvania. Welcome. Thank you very much. I want to begin I think addressing mootness since I believe that's the direction the court wanted us to go. That'd be great. First of all with respect to this case this particular case is unique among the COVID cases in the United States and the reason I say that is this case was brought as a declaratory judgment action. Under federal rule 57 the FLEs requested and Judge Stickman agreed to hear this on on an expedited basis a speedy hearing and under rule 57 we had a speedy hearing. There were 18 witnesses who testified and there is a complete record in this case. Some witnesses testified live others testified by affidavit. So there is a complete record that was created in this particular case. Yeah and Mr. King it was a record that was created as of the facts that existed at the point in time at which people testified. The mootness question is asking us not what happened then but what's going on now. Mr. DeLone say we're just in a different world and and in fact these orders have expired on their own terms. Why aren't we in the position that the Fifth Circuit was describing in Spell versus Edwards where it said these things have expired and that's that. There's it's over. It's done. Yes sir. To answer your question we're not sure what world we're in at this point. The Delta variant the is affecting the world. Shutdowns are taking place across the across the world. We are perhaps in the same place where we began some time ago and in addition to that in Pennsylvania what we had seen is that these issues before this court these are these are discrete issues that we did not attack the virus the science. We didn't get involved in suggesting that there's not a pandemic. What we did suggest is that orders that affect staying at home congregate rule it rules with respect to gatherings and business closures in the in the way they were carried out in the Commonwealth of Pennsylvania are likely to be. We understand that counsel but but wasn't the environment much different when these things were enacted. We had a deadly virus that was poorly understood at the time. A vaccine was just an aspiration. It was a thought and and and the Commonwealth was trying to protect its people. Well today it's a lot different. I understand the Delta variant is also deadly but as your as your friend points out I think 62% of people of adults anywhere vaccinated here in this state. That's not to say it won't hurt others or even the vaccinated and your honor. Um I would suggest that the the vaccinate the vaccines themselves as it's been widely reported have never been approved by the Food and Drug Administration. So the vaccines that have been approved are certainly experimental at this point and and approved only as an in an emergency basis. So whether you have vaccine, I'm not sure how that's relevant. The question is that does the FDA processes result in a final approval here or not? The best the best evidence that we're working off of is they're highly effective and they're highly effective against the Delta variant variant too. And you're just in a different world because well over half the population adult population has been vaccinated and therefore the assertion for Mr Delon is it's it's extremely unlikely that orders of the type that we saw before are going to be reimposed. So what's your what's your answer to that? My answer to that is your honor that I don't think it is extremely unlikely that orders of this nature might be imposed again. And I and I based that upon and and I go to the to the correspondence back and forth with the panel. The comments by the governor of the Commonwealth of Pennsylvania. The governor is reported to have said and there's no contradiction from my colleague Mr. Delon here. The governor is reported to have said that although he may have been reined in somewhat by the constitutional amendments in Pennsylvania, the health secretary nonetheless retains the right to tell people to stay home and to and to close business. But the question of whether an individual or entity has authority doesn't answer whether it's reasonably likely that the same orders will be entered given the circumstances confronted. I understand your honor but I take them at their word and and I suggest to you that they did these things. But the word that you have relayed to us is the word is the secretary has authority. The governor has the governor has said the secretary has authority. Let's roll back. Do you agree the governor no longer has the authority to impose the orders that you challenged in the district court? I would answer it this way. The governor has been reined in by the constitutional amendments. Could the governor could the governor do it? We know we have a joint resolution from the Pennsylvania legislature says no more emergency declaration. So he doesn't have his authority to enter those orders. Do you agree with that? Yeah in in this particular circumstance that's true but the governor retains powers under the under the constitutional amendment. I hear I understand that and I agree with that but we are focused on the orders that were challenged. Those are the only things in front of our court not what the what someone could do other than those orders. Knowing what the state of affairs are with the people of Pennsylvania passing an amendment and the joint resolution the governor lacks the authority to enter those same orders. Do you agree with that? I would be pleased to agree that the governor does not have such authority. I'm concerned however that the governor and suggest to you that the governor may have residual authority under these constitutional amendments. For example the constitutional amendments adopted by the people of Pennsylvania leave open the question for the legislature to identify the nature of the of those things that the governor will have power over. I understand that. It is entirely possible at the current moment the legislature is controlled by one party and the governor is a member of the other party and so at some point the governor and the legislature may all be in sync and so it is entirely possible. But that's a speculative circumstance that we can't rule on. We can only rule on the orders that you on behalf of your clients challenged being unconstitutional and whether or not the governor has the authority to reimpose them and as I understand the state of affairs those orders the governor lacks the individual authority to do that anymore. Well I agree with that, right? Yes ma'am. I would like to cite back to the Roman Catholic diocese case. But I want to say I just want to stay with the authorities if we don't mind that the parties in this litigation and I promise I'll let you read Roman Catholic. But with respect to the governor I think I've queried you on that subject with respect to the secretary your position is the secretary has the authority to enter the same order that has expired. Is that your position? I believe that the secretary does say that. That's all I want to know is that was that your position. I'll let you read the Roman Catholic and I'll follow up. Go ahead. What would you like to share from the case? So going back to Roman Catholic Diocese the same sort of issue arose as the movements and in the in that particular case the Supreme Court of the United States said and I quote it is easy enough to say it would be a small thing to require the parties to refile their applications. This is the opinion of Justice Breyer. But none of us are rabbis wondering whether future services will be disrupted as the High Holy Days were or the priests preparing for Christmas. Nor may we discount the burden on the faithful who have lived for months under New York's unconstitutional regime unable to attend religious services. Whether this court could decide a renewed application promptly is beside the point. The parties before us have already shown their entitlement to relief. But isn't that case a little bit different because first of all it was a religion case. Second, I don't think that was a case and I'm happy to be corrected where the terms of the orders at issue expired on their own terms. They did they weren't there wasn't some changes that were going on by the at the at the pleasure of the executive. Here we have an expired order so I do think we need to focus on the state of affairs of our case. All right well I would still suggest though your honor that that looking at Roman Catholic Diocese that the Supreme Court is saying for example that in applying it to this case we have the before you we have the ability of the Secretary of Health in Pennsylvania to issue these types of orders again in answering your earlier question. And so here we are we briefed these issues. These are all fundamental rights. They may not be. Can I just ask you a question just along the lines of what Judge Schwartz is saying. You pointed out you read that that that that snippet and that that's true. But the Supreme Court since has that has haven't vacated a couple of COVID related Court of Appeals decisions on the basis of mootness. The Abbott case out of the Fifth Circuit, Adams and Boyle out of the Sixth Circuit. What what do we take from that? I've read those and I've read and I understand the Abbott case was vacated. Of course the Abbott case involved you know the court looking at the application of the ability to obtain an abortion in Texas. Right. And interference with that fundamental right under the Constitution and it was weighed in that in that regard. I just think that in this particular case that these issues are not otherwise before any court at this moment and at least in the Commonwealth of Pennsylvania or in the federal system. The issues of ordering people to stay in their homes. The issue of limiting a federal congressman and state representatives from engaging in political gatherings with other people and closing businesses. Picking winners and losers. Nobody's suggesting they're not important issues. Nobody's suggesting they're not important issues. The question is are they still extant issues? That's that's the thing we're having to wrestle with right? So they're important issues but are they live issues? And the voluntary cessation doctrine by its terms it's about a government entity stopping doing something. In essence gaining the system. Stopping so that there can't be judicial review. Now Judge Schwartz has put it to you. I put it to you again. Does it does it matter that the that these orders expired on their own? That was the circumstance the Fifth Circuit was dealing with in Spell versus Edwards and they thought that was meaningful. They said voluntary cessation doesn't apply because we're not talking about the government stopping doing something where you could see oh they're doing it to prevent judicial review. These expired on their own terms. So does that put us in a different analytical posture? I think it would. I think it does. Okay and if it were in a different analytical posture doesn't that hurt you? Well the the difference between the two of course logically is that that one is the affirmative action of government voluntarily discontinuing something. The other is simply the expiration of a given order due to due to the to the time running out, the clock running out. And we're aren't we in that latter circumstance here? These orders expired by their terms right? They did but they are likely they are viable to be repeated. They are likely to be repeated in some form in the future. The Secretary of Health has that authority. Does have that authority but I'm trying to get you to address and tell us whether and I think you have told us it is it did expire by its terms. Does that mean voluntary cessation just doesn't apply? I don't think this is voluntary cessation. I think it's it's simply the clock ran out. The orders expired. There's not no affirmative action taken by the Secretary of Health nor by the governor of Pennsylvania to say that they will no longer lock people in their homes. That they will no longer pick winners and losers in closing businesses and they will no longer tell state representatives and congressmen and other other people in Pennsylvania that they can't gather. If voluntary cessation doesn't apply then the only route you've got left is capable of repetition but evading review. Is that right? Yes. Where did you make that argument? These orders are entirely capable of Yeah. Like where did you preserve that position? Where did we make there? Yeah. I mean in your briefing here where did you make that argument? I can't point to the specifics of that but I know in the discourse back and forth with the court on the mootness issue I believe that we at least referenced the fact that the Secretary of Health still had these powers and so with the with the with the these powers then they're capable of repetition. I'm not sure that we said any more than that but I think that's what we said to the court. But the second component even if you did the second component is evading review and all these orders are getting reviewed. So I'm not sure how you would even satisfy the the test for capable of repetition of the sorry the exception to mootness of capable of repetition but evading review when these not just your case but all Yes Your Honor. I would I would I would respectfully direct the court's attention back to the record in this case of course. So in the lower court in the district court before Judge Stickman the issue of mootness arose and Judge Stickman addressed the issue of mootness which was brought up by the Commonwealth at that time. So therefore it was didn't evade review. So I think not only maybe there's a waiver problem in front of us but it sounds like the doctor may not apply here. Right. So what we had in this case was we had the Commonwealth saying in the lower court in the district court that that the case was was moot. Then we had the the Commonwealth in this court saying the case was not moot and then we had the case in this in this court where the Commonwealth says it is moot. So the Commonwealth position has changed. I understand and I listened to my colleague explain or try to explain this morning why their position had changed. Our position I don't think has changed and if our position is that with respect to the Secretary of Health in this case in Pennsylvania and I and I was waiting with bated breath for the response from my colleague this morning with respect to whether or not the Secretary of Health has the has the ability to enter similar orders and I think I heard that the Commonwealth says that the Secretary has the power to enter similar orders and I believe that's the response that that the gentleman behind me gave you in the correspondence directed to the court that the secretary has these powers and that with those powers the secretary has the ability to enter the very same orders that are here and I think likely to be report likely to be reinstated means we have we still we're still in the midst of a pandemic we're still wearing masks in the courtroom we have the Delta variant we have if you're if you're not into in the voluntary cessation world and you said you're not and you're and you're your route out of mootness is capable of repetition but evading review if that's your if that's your way out how do you meet the evading review part I mean you will presumably if an order comes into place you're right back to court we will and I think that's why that's why Roman Roman Catholic diocese is instructive in that regard the same arguments were made in Roman Catholic diocese the Jewish congregations who were horribly dealt with by Governor Cuomo in that instance those orders were about to expire and and the suggestion was made likely to repeat that's the that's the point they hadn't expired they the court was dealing with an existing violation it was in front of them it was happening that was what was going on in Catholic diocese of Brooklyn here everybody in this courtroom agrees the orders that are being challenged are no longer in effect right they're just not in effect it's not happening yes so isn't that a dramatic difference from Roman Catholic diocese of Brooklyn it's a difference of course your honor but not dramatic because in Roman Catholic the court addressed that that these orders were about to expire and so the suggestion was made by counsel in that case that orders that are about to expire will next week or next month whatever the case may be and so the court addressed that and the court said these these fundamental rights granted by our Constitution in this country are were attacked and are these fundamental rights may be attacked again and that and the order this is these are so egregious the ordering 14 million Pennsylvanians to stay in their homes closing businesses regardless of whether they they were the same as other businesses that were allowed to remain open that people lost their livelihoods here people lost their businesses people were put out of work and then and then the the the with respect to the to the political people the inability of people to campaign or to hold meetings while you could have you could have you could have a gathering in Carlisle Pennsylvania which was it which was a big part of this case so in in the in the record in this case in Carlisle Pennsylvania there is a large fairground if you've traveled a turnpike you'll see a large fairground that fairground holds thousands and thousands of people the Secretary of Health of Pennsylvania brought an action to enjoin the car show from occurring and during the course of that yeah we're familiar with the facts I just got to ask you a question puzzling this out you won in the court below yes sir if this case is moot and the appeal is dismissed you go out a winner right well yes sir okay I'll pick up on that right away well I'm just wondering you know usually when somebody is arguing against mootness it's because they want to change something you gotta now I understand that the other side wants it declared moot and the lower courts decision vacated those things don't necessarily go hand in hand it could be that the appeal is just moved by itself but why why are you arguing so hard against mootness when if the appeal is moot the district court opinion stands and you're a winner I just don't understand that piece of it well your honor I have to smile a bit because this is the same discussions of course that we've had in our in our own firm well you don't have to reveal internal secrets but if you want to enlighten us about that I'd be happy to hear it well and and and what my response is to that respectfully your honor is that these actions taken and we have clients in this case we have little people who own businesses we have people on hair salons we have a horse trend we have a gentleman is an elderly gentleman owns a furniture store we have people on restaurants these are little people in this case in addition to a United States congressman and several state representatives these are issues that are so fundamentally important to people in Pennsylvania and to our client to the clients in this case it came out the way they wanted well and they and they and the suggestion by by the Commonwealth that these things are not capable of repetition or will not be repeated and and I believe your honor you've pressed my colleague with respect to whether or again and was he prepared to say today that they wouldn't and he could not say that and he didn't say it and so ordering people to stay in their homes closing businesses happenstance the record in this case is is the void of anything close to any science being applied to this case the record in this case shows a gang of five in the governor's office a group of five respectfully in the governor's office people without medical degrees people without any medical background making decisions choosing happenstance it was totally uninformed the record reflects that from the testimony mr. Robinson and others that they conferred they examined CDC materials they looked at the thesis stuff they looked at the other listings that they didn't go in uninitiated or on uneducated on it you're making it sound like they just threw a dartboard and decided which which to close I'm you you do agree they articulated the framework that they were educated to apply including CDC guidance I would suggest your honor that I wouldn't agree entirely with your honor's statement but I will say that that there was a group and there were there were things that they conferred on there were no definitions of what it is they were trying to deal with and I would I would I would suggest to you that especially with respect to the business closures that it was nothing more than a dartboard it was a book contained with industries listed in it where where people on a whim and a fancy put your business in category 102 and judge Jordan's business in category 105 and we said one of the services were provided by the particular business that issue there the record below shows that there is no indication whatsoever that the book the document they used had anything other than the category of categories of businesses and so what the record also shows is that there was a process by which you could challenge whether you were in the right number or not not on the substance of what it is that you did but whether you were in the right number in the waiver program yes ma'am and the waiver program they made thousands of changes right they made they in fact granted thousands of changes right but the waiver program your honor was only I should be in number 102 versus 105 never looking at the substance of what it was that the that the business did mr. King that doesn't look I understand you have a difference of opinion you think the line should have been drawn better in fact it was drawn so poorly that it constitutes a constitutional violation but really the language of a gang of five and things like that you really do make it sound like these are nefarious people I mean I hope I hope we could at least agree that these were people operating in good faith trying to handle a very dangerous situation to the benefit of the citizens who they were responsible to help you know I hope we could at least get that baseline of civil and civic discourse in place with that in place assuming as I do that that's in place I go back to the question I'm pressing you on which is if this appeal is moot haven't your clients gotten everything they were entitled to get and want what is it that makes you press this appeal and say it's not moot do you want to not just to win but to be able to say we won and we really really won what's the point the point is your honor that that we sincerely suggest to the court that these things are capable of repetition and that they repeat don't you go right back to court don't you don't you in fact go right back to judge Stickman and say look what they're doing we certainly could do that and with it then it's not evading review is it we would do that and and I can only say to you that we believe that the reason we believe it's not moot is because they're capable of repetition okay I don't want to believe it belabor the point but these are fundamental rights I could have gotten this wrong I thought I heard you say that that it's highly likely that these orders are will go back into place is that so the only the only reason I say that your honor is I hope that it's not true I hope it doesn't happen I sincerely hope that and I hope that everybody is in fact operating in in good faith and attempting to accomplish something despite the fact that in my opinion and our clients opinion they violated the constitutional rights of all these people in various ways so I hope that that's true but we when I say that I say it because the war I believe the words of the governor have no reason to doubt him and the governor's words are exactly what we judge Jordan read earlier I think in the correspondence that we provided to the court the governor's words were the Secretary of Health retains the ability to close businesses and lock people down in their homes but you think it's highly I think you said it's highly likely that they will reinstate these these same I believe I say that is because those words out of the governor's mouth addressing those very issues he knows full well and he's a defendant in this case he knows full well that that we've challenged these on constitutional basis he knows that judge Stickman entered an order he knows exactly what he's doing he's a very bright gentleman and he's the governor of Pennsylvania for seven years and he said these things out loud are you are you alleging that there's things lapsed and not reinstating of immediately I don't I don't know about litigation posturing I'm just saying that the governor when asked and this was in response to his own powers being reined in by the by the constitutional amendments when asked suggested that not just suggested he said that the Secretary of Health retains these powers to do the very things that are in the case that is before the court and that's why this is so important to us we do not want these things ever to be repeated in Pennsylvania we do not want people to be locked down in their homes we do not want arbitrary and capricious choosing of winners and losers in closing businesses in Pennsylvania putting people out of work and we do not want people of whatever hill whatever bent whatever party we do not want people being deprived of their First Amendment rights to assemble and to gather and to engage in political political activity even the political candidates in this case testified that they were concerned I have political candidates they were incumbents right yes our plaintiff political parties aren't wall incumbents yes ma'am okay thank you go ahead these are these are these these are the warrants that these are the records of the cases people were arrested in Pennsylvania we are aware that we're also where the representation in the briefing before the district court that that was not intended and and completely reined in so I recognize your representation I'm not disputing that the record supports that arrests have happened they were early and there's also been a correction to that but if I could with judge Chigaris's permission if I could just ask one question on the could I write could I speak briefly to that you're on would you want to go ahead why don't you ask your question judge for okay I apologize I don't mean okay turn your attention to stay home yes right interest intrastate travel yes your complaint I didn't see that theory of violation in the complaint I don't know I don't recall if we said intrastate travel specifically but it certainly was part of the the travel the leaving it leaving home was certainly part of the component of the complaint and it certainly was it certainly was briefed in the lower court I just didn't see it in the complaint as a separate cause of action and I understand what you're serious I guess related issue is this a facial or an as-applied challenge and does it matter well I think it's I think it's certainly as applied with respect to with respect to what happened in this case so it certainly has applied with respect to the stay-at-home order it certainly has applied with the congregate ruleness but certainly as applied with the business closures what is that the deeds are also I mean if you look at the fundamental constitutional rights that are involved in these cases on their face the orders and this is I wanted to respond to judge Schwartz and I will now so the orders of the governor are quite clear the order the order and have would have it here with me the order says I order people to stay in their homes but you would concede that there are also exceptions to that correct there were there were exceptions like going outside to exercise and to go shopping to care for other people to go to church or to us religious services so it wasn't a lot you analogy that you personally the briefing analogized to a civil commitment you would agree this is not a civil commitment the people who the people who are arrested here were arrested on the arrest when you stay focused on the topic you just picked which was they had a stay-at-home and I asked you would you agree that there were exceptions you said to me really limited ones yes the less would you agree that that is not tantamount to a civil commitment yes they were saying there were exceptions but all of the people in the left case for example the Third Circuit left case on interstate travel all of the people in the left case would have been arrested well all let's was a case about teenagers cruising this is a case about a novel coronavirus that's killing tens of thousands of people and that's a little different isn't it I mean are we in a different world than teenagers cruising different than cruising cruising on highways but the point that I was trying to make is that the left case talking about interstate travel recognizes the interstate travel and interstate travel here resulted in people being arrested this stuff and we could if we wanted to we could get into the record and we could say now this person was also arrested for resisting arrest and was also arrested for public disturbance I mean we could go piece by piece through that and ask whether really what was happening was they were arrested just for being out of their home but that doesn't seem productive because your colleague on the other side has acknowledged mistakes were made early on allowances should be made for that correction was immediately done that's not really legally relevant since you've only been able to point to what is it three maybe four cases these are these are respectfully your honor I'm just talking about what's in the record I went and looked at the pages you cited to us there's a small handful and we'll acknowledge they exist but please don't make it sound like you know there were armed people patrolling the streets of Pennsylvania where people were being welded into their homes as a move on because that just wasn't happening but what let's focus on what did happen there was an emergency situation and it was being dealt with right yes sir okay so that's what's being dealt with and now this interest they traveled yeah if you want to deal with the substance of it assume that we're going to apply intermediate scrutiny what is lacking in the tailoring that would allow us to say that's a violation of the Constitution when the order allows for all of the things that judge Schwartz just outlined for you you're not that the aim of the order and the best effort of the order is to say look just you know stay at home with your family don't go out unnecessarily if you need to go to the store you need to go to the doctor you need to go to church go ahead and do those things but otherwise stay home what is wrong with that as narrowly tailored to meet an extraordinarily contagious and deadly disease what's wrong with it your honor is that I don't think that it's narrowly to the rights that Americans have with respect to as Justice Douglass and others have said much better than I ever could you have a right to to loiter you have a right to drive down and see if if if the ball if the ballpark is open or not you'll have a right to do all of these things so is the position mr. King that that no matter how take it away from coronavirus coronavirus assume we were talking about Ebola like you get near somebody and you're dead no matter how deadly no matter how contagious is the position you're taking the government can't touch it because we've got a right to be out yes okay good that's good and and and I would also I would also add that in this case what we have is the Secretary of Health using something that's never been used at least to my knowledge in and in order to judge Stickman's apparently in his order in the United States so under the under the health regulations in Pennsylvania we have quarantine or we have isolation and what we have in this case is we have the imposition of neither because people who were not who had not been subjected to were not exposed to the virus who didn't have the virus who weren't likely to transmit the virus those people were locked down in their homes and so there may be some exceptions some minor exceptions there are a myriad of things that people couldn't do and with respect to people being arrested the chilling effect of arresting anybody in the Commonwealth of Pennsylvania these things were known to 14 million people in Pennsylvania that you couldn't leave your home so people were looking to see what sort of papers would they need to carry to substantiate that they were in fact allowed to be out of their homes lawyers were lawyers offices were shut down dentists office were offices were shut down these were arbitrary and capricious things that I bring to this honorable court these were things that are egregious we did not challenge for example wearing masks we did not challenge social distancing we did we have never said that the governor doesn't have any power to address the health crisis what we have said is that the things that happened in this case are so egregious and and so violative of every American's right that they should never happen again and so that's why we're here today that's why we're not we we could claim victory and say it's smooth and and and that would be fine but that's not what this is about it's about these things are likely of repetition I wish I wish that the power of this court were so impressive that if we said yeah you still win that nothing would ever go wrong again in your view but somehow I think that no matter what we said if there was an order from the governor that came out you'd still have to go to court to stop it it wouldn't make a difference what we said and so I'm I think you're I think your position is not that different whether we say you win or we say it's blue you'd still have to go to court to enforce wouldn't you um I would if you're asking me your honor and I still have to go to court to I would say that that the respect that we all have for this court and for the judges of this court and the respect that we have for the Constitution are coterminous and that with respect to these particular three egregious actions by our governor and the health secretary in Pennsylvania that the citizens of Pennsylvania look to this court as we do to hopefully to ensure that these types of things will not happen to Pennsylvanians again they should never happen the people of Pennsylvania rose up and and adopted constitutional amendments to rein in the powers of their governor extraordinary events in the history of Pennsylvania two constitutional amendments passed at the same time and isn't that your solution right I mean isn't that what Cleburne the city of Cleburne says that in the end your your solution to a problem that you are complaining about is typically when it comes to line drawing and policy decisions in the political arena and it's working for you well this happened with this happened with the general populace and and the constitutional amendments were supported by over a million people in Pennsylvania so certainly there's a point is I think that's his point that the the people and their and their elected representatives in this particular scenario spoke up about what they believe the proper policy should be to respond to a health crisis that's where Jacobson that's where Chief Justice Robert even Justice Kavanaugh talked about it in the context of secular matters that these decisions should rest with the political branch and and by that I think we mean the record I think contains some some reference to the goings-on in the legislature and then vetoes by the governor and so at the current time that's not going to happen the governor will veto any any attempt to rein in the powers of the Secretary of Health and and I think he's clearly said that with respect to the constitutional amendments but you know looking back at things like Jacobson the reason that these cases need to be decided and the reason that that the Third Circuit Court of Appeals the you know the second highest court in the United States the reason that we think that this court should take should should stop these types of things from ever happening again is looking at Jacobson look at the progeny from Jacobson from your amicus right we are going to hear yes we're going to hear an excellent discourse but look at look at Beck versus Bell look at the horrendous the horrible decision in Beck versus Bell that followed Jacobson that that word justice Oliver Wendell Holmes a widely respected jurist of historic nature makes a statement that the principle that sustains compulsory vaccination is broad enough to cover cutting the fallopian tubes of women and it just dealt with people that they that they referred to as imbecile and Holmes went on to say three generations of imbeciles are enough that's a horrible result coming emanating out of Jacobson and so if Jacobson authorizes these types of things that happen what we were what we're suggesting to the court here is that these cases are important enough these things that were done to Pennsylvanians are important enough that we respectfully submit that the court ought to affirm the lower courts decision which was based entirely on a record and we suggest that they're not moved because they are capable of repetition thank you counsel thank you very much we'll hear from your colleague good morning may I please the court my name is David Kott K-O-T-T I'm a lawyer with McCarter in English and I represent the amicus the New Jersey's Business and Industry Association which is the largest business trade association in New Jersey I want to make two rapid-fire points on a very limited issue and that issue is whether this court should apply the usual customary constitutional tiers of scrutiny in strict scrutiny and immediate scrutiny or rational basis first rapid fire point the answer to that issue is found in the US Supreme Court's two most recent COVID decisions in the Roman Catholic Diocese case the court applied strict scrutiny the majority opinion did not even refer to Jacobson cite to it or refer to it there is a dissent well yeah they fight strict scrutiny because they were dealing with a First Amendment issue right well it is your point that tiered scrutiny does apply and therefore it could be strict it could be intermediate it could be rational and Jacobson doesn't create some new and different here is that the point that's exactly the point okay okay got it and in in the Roman Catholic Diocese case there's a dissent by Justice Sotomayor joined by Justice Kagan and she dissents from the result but she also applies strict scrutiny and does not cite to Jacobson the other case is the South Bay versus Newsom case and we have a lot of opinions in that case but there is a statement by Justice Gorsuch joined by Justices Alito and Thomas and concurred in by Justice Kavanaugh and by Justice Barrett and Justice Gorsuch applies strict scrutiny and he in his opinion does not even mention or cite to Jacobson what you're asking us to do is read tea leaves from those two cases to say Jacobson is not the governing law that's what you want to infer from that crowd I'm not saying infer or read tea leaves I'm saying that is the holding of those cases those cases hold that Jacobson is not good law those cases hold that in this context the court must apply a constitutional tiering and on the question of whether Jacobson is good law and I'll address that here as Judge Jordan said when we look at the Jacobson opinion it essentially applied a rational basis decision and Jacobson itself says I'm going to do a rough paraphrase that if there's a government regulation that is unconstitutional it must yield to the Constitution so we also we also so your position is Jacobson may have come before the language of tiered scrutiny was in place but it applied rational basis for you correct and in fact to add to my position we didn't have the tiered system meaning strict scrutiny and the rest until about Brown versus Board of Education so if you read Jacobson as some courts outside of this certain circuit have read it they're saying well no we're not going to apply a tiered scrutiny you this court would need to Supreme Court jurisprudence on strict scrutiny and the like but the jurisprudence of this court and the district court here treated Jacobson as applying it applied rational basis for view to portions of its opinion right correct okay so my second rapid-fire what about though several of our sister circuits have applied Jacobson correct Abbott Rutledge in the 8th circuit I circuit they were wrong I I believe they they were wrong and I will confess I don't remember the timing I don't remember whether some of those decisions were before South Bay and before the Roman Catholic Diocese cases this court is fortunate that you have a benefit I've often thought the hardest thing to be a judge is if you don't have precedent because then you have to guess what the appellate court would do you've got precedent by the Supreme Court and the argument I'm making this is my second rapid point rapid-fire point is agreed to by the defendants appellants here I would refer this court to page 26 of their opening brief page 8 of the reply brief and pages 16 and 17 of their September 25 2020 brief on the stay and in all three briefs the appellants defendant state and I would submit clear as a bell that they agree that this court should apply the usual customary constitutional tiered analysis and that is what we ask this court to do one final thing I thank this court for allowing New Jersey Business and Industry Association to present oral thank you counsel and we'll hear rebuttal from the appellate I promise I will be very brief just on the question of mootness I just like take your mask oh excuse me I'm sorry you're on that's okay they just make it easier yep yep sorry on the question mootness I just would like to reemphasize what my friend said which is the these orders have expired by their own terms and that his position with respect to mootness seems to be that they're not presented these issues are not presented before any court so let's assume for the sake of discussion that after all this conversation we agreed okay the appeal is moot this appeal is moot yeah and so we dismissed the appeal that satisfied the state commonwealth your honor we think monthly where it should be applied to and one thing where's the why would if this is if this is moot why would we do anything why would we you've you've already said and you've made the pitch hard that the mootness you're arguing for here is it's moot today not that it wasn't real when it happened no I agree okay so why would we undo what was done when those things were expand how can you have it both ways how can you say we want you to erase what happened well because and say it's you know things have changed they're way different now that's why you should dismiss that's your honor that's the point of months and where things have changed so we're now not in a position where we can review the district courts decision however it will found it and that's why you do months in where and with with all due respect based on the discussion we had earlier so what you want to do is win without having anybody look at your arguments you want it you want to erase what the district court did without anybody actually reviewing what you did what your arguments are your honor if the case is moot this court no longer has any jurisdiction and so we so we would dismiss the appeal true but the purpose of months in wet months in where is always when you're dismissing the appeal for mootness anyway the purpose of respect and again this answer their point then if your argument is spawn confusion their argument pitch pretty hard here today is if you don't speak to this then they're going to think they can do whatever they want you need to lock you need to address this because with impunity these public officials will go back and do the things they did again well and if we say okay well that's a real concern then I guess we should say it's not moot but if we agree with you we don't want to spawn confusion maybe the thing to do is dismiss this appeal and we just dismissed the appeal and what judge stickman said he said wait you're that is certainly your prerogative your honor but I would respectfully suggest that the fact that the chick that the circumstances on the judge stickman made below I would remind the court really so so you want us to get at the merits no oh I'm not sure how you can have it both ways that's what that's what monting where is for is to say we can't reach the merits anymore we don't have any jurisdiction but we don't want people to be led astray by what judge stickman did and I would remind this but then how could we say we don't want people be led astray if we don't address the merits and say because I vacate and dismiss as moot that's all you do no and that's not all we do what you're saying what you're actually saying I mean I'm listening to what you're saying and what you're saying is he was wrong he was so wrong so just vacated but please don't say anything about why he was so wrong is that the way judicial review is supposed to work that's that's the way the month and where principal works when you don't have any jurisdiction anymore obviously it's up to this court to decide whether it's moot or not to address the case and obviously this court can exercise its own prerogative and say all we're going to do is declare this is as moot but I'm suggesting to you that this is a particularly important instance where you should adopt monting where I just remind the court that this court itself granted a stay which is an extraordinary thing to do and we heard very eloquently from amicus do you think the granting of hints in it but by granting this day we were saying a judge stickman was wrong wrong wrong or were we just saying this is very important we want to hear it but we don't want the district court's order to go into effect while we hear it I think it could be a combination I don't know you are I think it's I think it's not unreasonable to suggest that it was a combination of both you just heard amicus very eloquently speak to certain issues I would commend this court the amicus of Delaware New Jersey our sister states that talked about this particular case and with all due respect referred to judge stickman's order with some detail as an outlier and I would suggest that this is a particular circumstance where monting where this case is moot it's no longer an active case and Lansing where should be applied okay thank you counsel thank you very much we would like to thank counsel for their excellent arguments both written and oral we'll take the case under advisement and wish everyone good health and we all hope you enjoy the rest of your summer thank you thank you thank you